**In re THE ANTIOCH COMPANY, et al., Debtor.**

**The Antioch Company Litigation Trust, W. Timothy Miller, Trustee, Plaintiff**

**v.**

**Lee Morgan et al., Defendants.**

**Bankruptcy Nos. 08–35741, 08–35742, 08–35743, 08–35744, 08–35745, 08–35746, 08–35747, 08–35741.**
**Adversary No. 09–3409.**

United States Bankruptcy Court, S.D. Ohio, Western Division, at Dayton.

May 26, 2010.

**494**

Beth A. Silvers, Marcia Voorhis Andrew, Taft Stettinius & Hollister LLP, Cincinnati, OH, for Plaintiff.

Brian P. Muething, Michael L. Scheier, Cincinnati, OH, for Lee Morgan, Asha Morgan Moran, Chandra Attiken, Marty Moran, Lee Morgan GDOT Trust # 1, Lee Morgan GDOT Trust # 2, Lee Morgan GDOT Trust # 3, Lee Morgan Pourover Trust # 1, Lee Morgan Pourover Trust # 2.

Robert A. Klingler, Cincinnati, OH, for Steve Bevelhymer, Karen Felix, Barry Hoskins, Kimberly Lipson–Wilson, G. Robert Morris.

Terence L. Fague, Dayton, OH, for Nancy Blair, Wayne Alan Luce, Frederick Walker.

Jennifer L. Maffett, Thompson Hine LLP, Scott A. King, Dayton, OH, for Ben Carlson, Jeanine McLaughlin, Dennis Sanan, Malte Von Matthiessen.

Michael N. Schaeffer, Columbus, OH, Robert R. Kracht, Cleveland, OH, for Candlewood Partners, LLC.

Ronald E. Gold, Frost Brown Todd LLC, Cincinnati, OH, for CRG Partners Group, Michael Epstein, Paul Ravaris.

Scott J. Stitt, James E. Arnold & Assoc., Columbus, OH, for Evolve Bank and Trust.

David M. Duwel, Duwel and Associates, Dayton, OH, for Karen Felix.

Julie A. Govreau, Theodore M. Becker, Morgan Lewis & Bockius LLP, Chicago, IL, Wendy S. Walker, Morgan, Lewis & Bockius LLP, New York, NY, for Greatbanc Trust Company.

Emily N. Dillingham, Gregory Otsuka, Paul, Hastings, Janofsky & Walker, LP, Richard A. Chesley, Chicago, IL, for Houlihan, Lokey, Howard & Zukin, Inc.

R. Daniel Prentiss, Prentiss Law Firm, Providence, RI, for James Northrup.

Chad E. Burton, Leppla Associates, Dayton, OH, William Bard Brockman,

Bryan Cave Powell Goldstein, Atlanta, GA, for Reliance Trust Company.

## Decision Denying Motion of Certain Defendants to Stay Adversary Proceeding

GUY R. HUMPHREY, Bankruptcy Judge.

### I. Introduction

The narrow question presented is whether this adversary proceeding should be stayed until the United States District Court for the Southern District of Ohio (the "District Court") rules on the moving parties' motion requesting that the District Court withdraw the reference as to this adversary proceeding. For the reasons discussed below, the court is denying the motion to stay the adversary proceeding.

### II. Procedural and Factual Background

On December 23, 2009 W. Timothy Miller as the Trustee of the Antioch Litigation Trust (referred to as the "Litigation Trust," "Litigation Trustee," or the "Plaintiff") filed a complaint against thirty defendants (Doc. 1; the "Complaint").[1] The Complaint includes a jury demand and fifteen causes of action all concerning events that lead to a 2003 transaction through which the Antioch Company and certain subsidiaries became wholly owned by an employee stock ownership plan (the "ESOP" and the "ESOP Transaction") and certain other decisions in the aftermath of that transaction by various insiders, officers and directors of the Antioch Company and trustees of the ESOP, as well as certain other institutions. The Complaint alleges in its introduction that "the Defendants placed their own interests ahead of the interests of the Company, its employees, and its creditors. As a result, the Company, once a highly profitable enterprise, filed for bankruptcy protection." (Doc. 1, ¶ 1).

The Complaint asserts the following non-bankruptcy causes of action: breach of fiduciary duty, aiding and abetting breach of fiduciary duty, professional negligence and tortious interference with business contracts. Two of the causes of action are based on bankruptcy law: an equitable subordination claim and a preference claim. In addition, the final claim for relief seeks attorney fees "[u]nder applicable state and federal law." (Doc. 1, ¶ 263). Although the non-bankruptcy causes of action concern events surrounding the ESOP transaction and the ESOP is generally governed by other federal law, namely the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the Complaint does not assert any ERISA claims. However, the Complaint does raise ERISA law within the Complaint. For example, in paragraph 82 it asserts that "Lee [Morgan], Asha [Moran], and [Chandra] Attiken knew or reasonably should have known that causing Antioch to enter the ESOP transaction violated their obligations as ERISA fiduciaries of the ESOP" and in paragraph 83 it asserts that "[t]he officers and directors knew or reasonably should have known that the 2003 ESOP transaction was a 'prohibited transaction' under ERISA Sections 406 and 408, which would result in violations of ERISA...."

On March 22, 2010 nine of the thirty defendants, specifically Lee Morgan, Asha Moran, Chandra Attiken, Marty Moran, Lee Morgan GDOT Trust # 1, Lee Morgan GDOT Trust # 2, Lee Morgan GDOT

---

1. The Litigation Trust was formed through provisions of the Second Amended Plan of Reorganization (Doc. 270) that was confirmed through an order entered on January 27, 2009 (Doc. 319).

Trust # 3, Lee Morgan Pourover Trust # 1 and Lee Morgan Pourover Trust # 2 (collectively, the "Movants") filed their *Motion of Certain Defendants for Limited Stay Pending a Decision by the District Court on their Motion to Partially Withdraw the Reference to the Bankruptcy Court, and Memorandum in Support* (Doc. 146) (the "Motion"). On the same day, the Movants also filed a motion requesting that the District Court partially withdraw the reference to adjudicate this adversary proceeding on its own. *See* 28 U.S.C. § 157(d). On April 12, 2010 the Litigation Trust filed a response in opposition to the Motion (Doc. 188) and Movants filed a reply brief on April 23, 2010 (Doc. 198).

The Movants limited their stay request to allow all parties to complete briefing on the various motions to dismiss filed by the defendants. That briefing process has been completed so this limitation is moot. The motion to withdraw the reference also has been briefed and is pending before the District Court.

## III. Legal Analysis and Conclusions

### A. Jurisdiction

At least unless and until the District Court withdraws the reference as to this adversary proceeding, this court has jurisdiction pursuant to 28 U.S.C. § 1334 and the General Order of Reference of the District Court (General Order No. 05–02). *See also* Federal Rule of Bankruptcy Procedure ("BR") 5011(c) discussed below providing that motions seeking a stay pending the determination of withdrawal of the reference and abstention motions are ordinarily to be addressed first to the bankruptcy court.[2]

---

2. The court is contemporaneously issuing a separate decision on *Defendant GreatBanc Trust Company's Motion for Abstention* (Doc.

### B. Bankruptcy Rule 5011(c)

BR 5011(c) governs whether an adversary proceeding or a case should be stayed by a bankruptcy court pending a motion requesting the district court to withdraw the reference or requesting the bankruptcy court to abstain from a proceeding. BR 5011(c) states:

The filing of a motion for withdrawal of a case or proceeding or for abstention pursuant to 28 U.S.C. § 1334(c) shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion. A motion for a stay ordinarily shall be presented first to the bankruptcy judge. A motion for stay or relief from a stay filed in the district court shall state why it has not been presented to or obtained from the bankruptcy judge. Relief granted by the district judge shall be on such terms and conditions as the judge deems proper.

The burden on such a motion rests with the party seeking the stay to establish that a stay under the circumstances would be appropriate. *Miller v. Vigilant Ins. Co. (In re Eagle Enters.), Inc.*, 259 B.R. 83, 86 (Bankr.E.D.Pa.2001).

Although BR 5011(c) provides little guidance as to the circumstances under which a bankruptcy court should stay a proceeding, it is clear from the plain language of the Rule that the granting of a stay should be the exception—not the general rule. The Rule states that such a motion "shall not stay the administration of the case or any proceeding therein before the bankruptcy judge except that the

---

156) requesting that the court abstain from this adversary proceeding.

bankruptcy judge may stay, on such terms and conditions as are proper, proceedings pending disposition of the motion."

■ While the term "may" in the Rule appears to grant the bankruptcy court broad discretion in determining such a motion, the case law applying the Rule has limited the circumstances under which a stay may be granted to essentially the circumstances under which a preliminary injunction would be appropriate under Federal Rule of Civil Procedure 65. Thus, a stay should be granted only if the moving party can show (1) the likelihood that the pending motion to withdraw will be granted (i.e. likelihood of success on the merits); (2) that the movant will suffer irreparable harm if the stay is denied; (3) that the non-movants will not be substantially harmed by the stay; and (4) the public interest will be served by granting the stay. *Eagle Enters.*, 259 B.R. at 86; *Northwestern Inst. Of Psychiatry, Inc. v. Travelers Indem. Co (In re Northwestern Institute of Psychiatry, Inc.)*, 268 B.R. 79, 83 (Bankr.E.D.Pa.2001). *See also Moltan Co. v. Eagle–Picher Indus.*, 55 F.3d 1171, 1175 (6th Cir.1995) as to the preliminary injunction standards in the Sixth Circuit.

### C. Application of the Four–Part Test to the Facts of this Adversary Proceeding Establishes that a Stay is Not Warranted

1. *Likelihood of Success on the Merits: The Court Determines that the District Court Will Likely Not Find Under 28 U.S.C. § 157(d) that Mandatory Withdrawal of the Reference is Required or that Permissive Withdrawal of the Reference is Appropriate*

■ The court determines that the Movants have not demonstrated that the District Court will likely find that mandatory withdrawal of the reference pursuant to 28 U.S.C. § 157(d) is required or that permissive withdrawal of the reference is appropriate.

A motion to withdraw the reference is mandatory if the District Court determines "that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). In some instances, this language has been applied quite literally. *See, e.g. Laborers' Pension Trust Fund–Detroit v. Kiefer (In re Kiefer)*, 276 B.R. 196, 198–202 (E.D.Mich.2002); *Martin v. Friedman*, 133 B.R. 609, 612 (N.D.Ohio 1991). The emerging trend, including cases from the District Court, only requires mandatory withdrawal "when 'substantial and material' consideration of non-Bankruptcy Code law 'is necessary for the resolution of a case or proceeding.'" *Holland v. LTV Steel Co., Inc.*, 288 B.R. 770, 773 (N.D.Ohio 2002), quoting *In re White Motor Corp.*, 42 B.R. 693, 703–04 (N.D.Ohio 1984). *See also Anderson v. Countrywide Home Loans, Inc. (In re Anderson)*, 395 B.R. 7 (E.D.Mich.2008) (adopting the "substantial and material" test); *In re Baldwin–United Corp.*, 57 B.R. 751, 757–58 (S.D.Ohio 1985) (same). The application of established federal law to particular facts has been determined to not constitute a "significant and material" application. *Holland*, 288 B.R. at 773. While the legal issues need not be of "cosmic proportions," the issue to be determined "must involve more than mere application of existing law to new facts." *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 955 (7th Cir.1996).[3]

---

**3.** In reaching this decision, the court, of course, expresses no view on the appropriate standard to withdraw the reference, a role exclusively preserved for the District Court.

One of the Movants' arguments that mandatory withdrawal of the reference is required is that the state law causes of action are preempted by ERISA and that this court would have to significantly interpret and apply ERISA law to render a determination on the preemption issue. The Complaint, at least on its face, does not assert a cause of action under non-bankruptcy federal law other than Count Fifteen requesting attorney fees "[u]nder applicable state and federal law."

The ERISA preemption issue is not presented to this court on an empty canvas. Multiple decisions of the Sixth Circuit address ERISA preemption and this court would be applying the legal principles of those decisions to the facts in this litigation. *See, e.g., Smith v. Provident Bank,* 170 F.3d 609 (6th Cir.1999); *See Thurman v. Pfizer, Inc.,* 484 F.3d 855 (6th Cir.2007); *Penny/Ohlmann/Nieman v. Miami Valley Pension Corp.,* 399 F.3d 692 (6th Cir.2005) (each of those cases address whether various state law claims are preempted by ERISA).[4] If the non-bankruptcy causes of action are preempted by ERISA, those causes of action would be dismissed and the Bankruptcy Court would not be presiding over non-bankruptcy causes of action.

Although the Movants are undoubtedly correct that the District Court addresses preemption issues more often than this court, the District Court has not set this standard as determinative. Rather, the question is whether this court will be addressing novel issues of law and not "mere application of existing law to new facts." *Vicars Ins. Agency,* 96 F.3d at 949. It is of little moment that the specific facts are complex. Rather the keystone test is whether the law is unsettled. Under this standard, this Bankruptcy Court does not find a likelihood that the District Court would find ERISA preemption to be a novel issue under Sixth Circuit law.

Nevertheless, the Movants argue that the ERISA issues which the court could address reach beyond the preemption question and present "a consideration of ERISA [that] will be material and continuous." (Doc. 198, p. 3). Specifically, the

Rather, the standard which the District Court is more likely to apply is relevant to this court's determination whether a stay under BR 5011(c) is appropriate.

4. Although the Movants assert the preemption question presents "novel issues or issues of first impression" (Doc. 198, Exhibit, p. 5) such as "whether non-ERISA fiduciaries are protected by ERISA preemption," "whether ERISA is implicated as a matter of law where Antioch ... is a 100% percent ESOP," and whether "state law tort claims unrelated to fiduciary duty are subject to ERISA preemption," this court, recognizing these issues may be quite complex, is unconvinced that these legal issues cannot be readily determined within the rubric of Sixth Circuit precedent.

*Chao v. Holman (In re Holman),* 325 B.R. 569, 573–74 (E.D.Ky.2005) based its decision to deny a motion for mandatory withdrawal on the basis that the Sixth Circuit sufficiently addressed the ERISA issues and under the "substantial and material" test, withdrawal was not required. The Movants suggest *Holman* should be differentiated because the bankruptcy court was addressing ERISA in the context of a core proceeding concerning dischargeability and the bankruptcy court had entered judgment. However, the basis of *Holman* was not the underlying nature of the dischargeability proceeding as core or non-core or whether a judgment had been entered by the bankruptcy court, but rather an analysis of the ERISA decisions of the Sixth Circuit under the "substantial and material" test. Although the District Court might determine this adversary proceeding presents "a farrago of ERISA issues" as in *Homeland Stores, Inc. v. Burris (In re Homeland Stores, Inc.),* 204 B.R. 427, 430 (D.De.1997), the court is unconvinced that the issues in the motions to dismiss cannot be determined by analysis of Sixth Circuit law and, therefore, cannot find a likelihood the motion seeking the withdrawal of the reference will be granted by the District Court.

Movants note that the Plaintiff will need to prove that the Movants violated their ERISA fiduciary duties to prevail and that the ESOP Transaction was a "prohibited transaction" under ERISA.[5] However, the Movants, who have the burden, fail to explain how either of these legal issues cannot be resolved based upon existing precedent. This argument merely recasts the preemption argument in a different mold by suggesting that the state law claims are, in essence, disguised ERISA claims. Regardless of whether this assertion is true, the disposition of various motions to dismiss based upon current law within the Sixth Circuit should settle the question. Accordingly, the court finds that the District Court is not likely to find mandatory withdrawal of the reference required under the facts of this adversary proceeding.

The court also determines that the District Court will likely find that permissive withdrawal of the reference is not appropriate. The Movants argue alternatively that withdrawal will likely be granted by the District Court under the permissive withdrawal of the reference standard for "cause." This court disagrees. While the result of any permissive withdrawal of the reference motion is uncertain, the burden lies with the Movants and this court cannot find a likelihood the District Court will grant the Motion based on "cause."

In determining cause, a district court can consider "promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economic use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Holland*, 288 B.R. at 774, quoting *In re Pruitt*, 910 F.2d 1160, 1168 (3rd Cir.1990); *Orion Pictures Corp. v. Show-*

*time Networks., Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2nd Cir.1993) (same). In at least one instance, the District Court limited permissive withdrawal to facts demonstrating "a clear indication of 'cause'" and the existence of "extraordinary circumstances." *Federated Dept. Stores, Inc. v. United States Envir. Protection Agency (In re Federated Dept. Stores, Inc.)*, 189 B.R. 142, 144 (Bankr.S.D.Ohio 1995). However, an unreported decision from the District Court has indicated that extraordinary circumstances are not a separate requirement. *Beerman–Peal Holdings, Inc. v. Carson Pirie Scott & Company (In re The Elder–Beerman Stores Corp.)*, 1997 WL 1774875, at *2 (S.D.Ohio Aug.1, 1997).

The Movants have raised with the District Court three arguments for permissive withdrawal: (1) the Plaintiff has made a jury demand; (2) most of the causes of action in the Complaint, and specifically against the Movants, are non-core within the meaning of 28 U.S.C. § 157(b)(2); and (3) judicial economy. The court finds, particularly at this pre-trial stage of the adversary proceeding, none of these arguments have a likelihood of success with the District Court.

The Movants have not shown any likelihood that a jury demand would lead to the District Court withdrawing the reference in the early stages of this adversary proceeding. Bankruptcy courts cannot conduct a jury trial without the consent of all the parties. 28 U.S.C. § 157(e); Bankruptcy Rule 9015(b). However, if a party is entitled to a jury and makes a jury demand, courts have frequently denied requests to withdraw the reference until the action is ready for trial. *See, e.g. Kenai*

---

**5.** On prohibited transactions under ERISA generally, *see Chao v. Hall Holding Co.*, 285 F.3d 415, 424–25 (6th Cir.2002).

*Corp. v. Nat'l Union Fire Ins. Co. (In re Kanai Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992) and *Enron Power Mktg., Inc. v. Va. Elec. & Power Co. (In re Enron Corp.)*, 318 B.R. 273, 275–276 (S.D.N.Y.2004). Local practice of the District Court is consistent with the courts which deny such requests to withdraw the reference until the action is ready for trial. *Spaeth v. Heckenkamp*, 2007 WL 188570, at *2 (S.D.Ohio Jan.22, 2007) (Motion for withdrawal of the reference denied based on right to a jury trial, "without prejudice to renewal if and when the adversary proceeding is ready for trial.").

The court also finds that the fact that most of the Plaintiff's claims may be non-core claims will not lead the District Court to conclude that permissive withdrawal is appropriate. The Movants assert that the District Court is likely to withdraw the reference because thirteen of the fifteen causes of action are non-core. The Plaintiff states in the Complaint that "[t]his matter is a core proceeding pursuant to 11 U.S.C. §§ 157(b)(2)(A), (E), (F), (H) and (O)" (Doc. 1, ¶ 3); however, this position is not explained in the Litigation Trustee's response to the Motion. The Plaintiff has not provided a count-by-count analysis as to which claims may be core and which claims may be non-core, but his Complaint states that this court has "pendent jurisdiction with respect to state law causes of action." Doc. 1, ¶ 2. While this court preliminarily agrees that thirteen of the Plaintiff's claims appear to be non-core, the court disagrees with the Movants' conclusion that a non-core determination as to those claims warrants permissive withdrawal of the reference.

The distinction between core and non-core proceedings was a response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) that "held that the Congressional grant of jurisdiction to bankruptcy courts to decide 'private rights' matters, such as state breach of contract claims, was unconstitutional." *Dayton Title Agency, Inc. v. Philadelphia Indemnity Ins. Co. (In re Dayton Title Agency, Inc.)*, 264 B.R. 880, 882–83 (Bankr.S.D.Ohio 2000), *citing Marathon*, 458 U.S. at 87, 102 S.Ct. 2858. Under the post-*Marathon* jurisdictional scheme, core proceedings under 28 U.S.C. § 157(b)(2) are subject to final determinations by the bankruptcy courts. However, in non-core proceedings, that are otherwise "related to" Title 11, bankruptcy courts "shall submit proposed findings of fact and conclusions of law to the district court and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2nd Cir.1993).[6] In the event that the District Court determines mandatory withdrawal of the reference is warranted, the core versus non-core issue would be moot because the District Court would be determining and entering final judgment on those matters.

The determination of whether a proceeding is core is left for the bankruptcy courts to determine. 28 U.S.C. § 157(b)(3) ("The bankruptcy court shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."). However, there is

---

**6.** A district court can refer "related to" matters to a bankruptcy court for final determination, but only with the consent of all the parties. 28 U.S.C. § 157(c)(2).

no statute or procedural rule setting a time limit for these core determinations. The core proceeding determination can be made at any time during a proceeding and may be raised by the bankruptcy court on its own motion. *See, e.g. Dayton Title,* 264 B.R. at 882 ("Recognizing that this status affects the extent of the bankruptcy court's jurisdiction and may impact the district court's determination of whether to withdraw the reference, the court set a hearing...."). In some circumstances, district courts have adjourned a motion to withdraw the reference until such a determination is made. *C–TC 9th Ave. P'Ship v. Norton Co. (In re C–TC 9th Ave. P'ship),* 177 B.R. 760, 766 (N.D.N.Y.1995).

The Sixth Circuit has defined a core proceeding "as matters created by, or determined by, a statutory provision of the Bankruptcy Code." *Dayton Title,* 264 B.R. at 884, *citing Michigan Employment Security Comm'n v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1144 (6th Cir.1991). Non-core proceedings "do not invoke a substantive right created by federal bankruptcy law and could exist outside of bankruptcy law." *Id.*

Based upon the Sixth Circuit's interpretation of what core proceedings and noncore proceedings are, the court makes preliminary findings that: a) the preference and equitable subordination claims present core proceedings or claims under 28 U.S.C. § 157(b)(2)(F) and (O); and b) because the thirteen non-bankruptcy law claims could exist outside the bankruptcy court's jurisdiction and do not involve substantive rights created by bankruptcy law, those claims are non-core proceedings or claims. However, since the parties to this adversary proceeding have not thoroughly briefed or argued the core versus non-core issues, the court is not making a final determination as to those issues in connec-

tion with any of the claims asserted in the Complaint at this time and will provide for separate briefing prior to making any final determination as to those issues.

Accordingly, assuming that most of the Plaintiff's claims are non-core, is the District Court likely to withdraw the reference at this pre-trial stage of the litigation? This court thinks that it is not. Even though it cannot render final judgment as to the non-core claims absent consent of the parties, this court, as a unit of the District Court, still has jurisdiction over non-core proceedings "related to" Title 11. 18 U.S.C. § 157(b)(1). Even in cases in which non-core issues have been paramount, courts have delayed withdrawing the reference until the time of trial. *William D. Mundinger Trust v. Lamson & Sessions Co.,* 2007 WL 2874695, at *2 (N.D.Ohio Sept.27, 2007), *citing Enron Corp.,* 318 B.R. at 275. *But see Nat'l Century Fin. Ent., Inc. v. Great Am. Ins. Co.,* 2005 U.S. Dist. LEXIS 13379, at *4–5 (S.D.Ohio July 5, 2005) ("The court will not require the bankruptcy court to oversee discovery and other pre-trial matters where none of the substantive rights at issue invoke bankruptcy law."). Thus, courts have in large part treated the issue of withdrawal of the reference based on the presence of non-core claims like that related to claims to be tried to a jury—they treat it as a timing issue, just affecting when the District Court becomes involved in the action.

Finally, the Movants' argument that judicial economy supports permissive withdrawal of the reference is also unavailing. While it is true the District Court is presiding over a lawsuit brought by the Litigation Trust against the law firm of McDermott, Will & Emery, the District Court is unlikely to find judicial economy is promoted at the pre-trial stage of this litigation by withdrawing the reference

and administering another lawsuit by the Litigation Trust involving thirty defendants. The Movants have not sufficiently explained why the District Court would withdraw the reference at this stage because of a common Plaintiff and certain common facts and law—and assumedly certain uncommon facts and law—in order to preside over two separate pieces of litigation. While undoubtedly some commonality exists between the two actions and the District Court could follow such a course, giving due weight to the apparent non-core nature of most of the causes of action, such limited commonality as to those two actions is insufficient to create a likelihood that the District Court will withdraw the reference and adjudicate the Plaintiff's claims during the pretrial stages of this litigation.

### 2. The Movants Will Not Suffer Irreparable Harm if the Stay is Not Granted

The Movants will not suffer irreparable harm if this court denies the requested stay. The Movants' argument that they will be irreparably harmed if this proceeding is not stayed pending the District Court's determination of the Motion because this court might overstep its jurisdictional and constitutional authority if it proceeds with adjudicating the adversary proceeding is without merit. First, the Movants are free to seek a stay from the District Court after the entry of this court's order on this decision. Second, the District Court can withdraw the reference at any time it chooses.[7] Third, it is not likely—based on the court's analysis of the decisions within this district and other districts—that the District Court will withdraw the reference at this early stage of

this litigation. Finally, a decision to stay this litigation cannot be premised on the mere possibility this court might interpret its jurisdiction in too broad a fashion. If Congress intended for the bankruptcy courts to stay proceedings upon the filing of a motion to withdraw the reference or to abstain, it would have so provided. Movants' argument regarding the risk of the Bankruptcy Court overstepping its jurisdictional and constitutional authority would not only remove the discretion accorded the bankruptcy courts under BR 5011(c), but also would flip the apparent presumption in favor of not staying such proceedings that arises out of the plain language of the Rule.

### 3. The Non–Moving Parties Will Be Prejudiced by a Stay

The third factor, whether a stay will harm the non-moving parties, also militates against the issuance of a stay. The Movants argue that the non-moving parties will benefit from a stay because they will be able to reduce, or perhaps eliminate, any substantial expenses during the interim of a stay. However, a stay would not likely eliminate such costs, but more probably just delay these costs being incurred. Further, the postponement of this litigation stalls the Litigation Trust's attempt to collect funds on behalf of the Class 5 creditors and Class 7 equity interest holders under the Plan. Those creditors and ESOP equity holders are entitled to determinations and bankruptcy courts have a particular responsibility to resolve litigation in a focused manner for the collective good of the many creditors and parties in interest affected by its decisions. The stay delays this process and at least one defendant in this litigation has argued

---

**7.** Any written decision or decisions on the various motions to dismiss will not be issued until after all parties are afforded the opportunity for oral argument, which will be scheduled in a separate order.

to the District Court against such a delay. *See Evolve Bank & Trust's Memorandum in Opposition to the Motion to Partially Withdraw the Reference to the Bankruptcy Court* (Doc. 185). None of the other defendants named in the Complaint, despite all raising issues to partially or completely dismiss causes of action against them, have supported the Motion.

### 4. *The Public Interest Does Not Support the Issuance of a Stay*

Finally, the Movants have not convinced this court that the stay of this adversary proceeding serves the public interest. Instead, this court will proceed to administer this adversary proceeding unless and until the District Court withdraws the reference or stays it. The only public interest in this litigation is to resolve it for all parties, including the potential beneficiaries of the Litigation Trust, in the most focused and expedient manner possible. While it is possible the District Court might withdraw the reference based in part on the public interest, the court does not find this factor would persuade the District Court to withdraw the reference at this stage of the litigation.

### IV. Conclusion

For the reasons stated, the *Motion of Certain Defendants for Limited Stay Pending a Decision by the District Court on their Motion to Partially Withdraw the Reference to the Bankruptcy Court* (Doc. 146) is **denied.** The court will enter a separate order consistent with this decision.

**IT IS SO ORDERED.**